**UNITED STATES, Appellee,**

v.

**Thomas R. HILL, Private First Class,
U.S. Army, Appellant**

No. 54,091.
CM 446804.

U.S. Court of Military Appeals.

Feb. 22, 1988.

For Appellant: *Captain Alfred H. Novotne* (argued); *Colonel Brooks B. La Grua, Lieutenant Colonel Arthur L. Hunt, Major Jerry W. Peace* (on brief).

For Appellee: *Major Byron J. Braun* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Captain Samuel J. Rob, Captain John D. Shaw* (on brief); *Colonel James Kucera and Lieutenant Colonel Adrian J. Gravelle.*

Opinion of the Court

EVERETT, Chief Judge:

Consistent with his pleas, Private First Class Hill was convicted of two specifications of wrongful distribution of marijuana, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The military judge, sitting alone, sentenced Hill to a dishonorable discharge, confinement for 17 months, total forfeitures, and reduction to the grade of E–1. Adhering to a pretrial agreement which only required Hill to plead guilty to the second specification, the convening authority approved the sentence but suspended all confinement in excess of 12 months and a day.

Although not raised in the Court of Military Review, we specified the following issue for review:[1]

> WHETHER APPELLANT'S PLEA OF GUILTY AS AN AIDER AND ABETTOR TO DISTRIBUTION OF MARIJUANA WAS PROVIDENT WHEN HIS TESTIMONY SHOWED THAT HE CONTRIBUTED TO THE PURCHASE OF THE MARIJUANA FOR HIS OWN USE.

I

Private Hill had overslept on June 14, 1984, when a civilian named Dottie visited him at his residence just outside of Fort Stewart, Georgia. Dottie, at this time working as a confidential informant, was accompanied by a uniformed soldier named Oberti, who was an investigator on a drug-suppression team operated by the Criminal Investigation Command (CID). While Hill was still in bed, Dottie spoke to Hill's civilian friend, Macy Roberson, who was staying with Hill at the time. At Dottie's request, Roberson was to take her and Investigator Oberti to an unknown location near Fort Stewart to purchase marijuana from a civilian known only to Dottie and Roberson. Because Roberson was driving Hill's car,

Hill—who was too inebriated to drive—went along as a passenger.

Upon arrival at the residence of this unknown civilian, Dottie and Investigator Oberti went to the door to purchase the marijuana, while Hill and Roberson remained in the car. Because the amount required to purchase the marijuana was more than Investigator Oberti had on hand, Hill and Roberson were asked to contribute money. After this money was pooled, Dottie purchased the marijuana and gave it to Oberti, who later refunded Hill the money which he and Roberson had contributed. The marijuana was never passed on by Oberti.

II

■ Article 77, UCMJ, 10 U.S.C. § 877, states that a person "who ... commits an offense punishable by this chapter, or aids, abets, counsels, commands, or procures its commission ... is a principal." As explained by paragraph 156 of the Manual for Courts-Martial, United States, 1969 (Revised edition), to be guilty of an offense committed by a perpetrator, an accused must somehow assist, encourage, or otherwise cause the commission of an offense and must share in the criminal purpose or design of the perpetrator. *Accord* para. 1*b* (2)(b), Part IV, Manual for Courts-Martial, United States, 1984. Therefore, for Hill to be guilty as a principal to the distribution of marijuana, (a) an unlawful distribution of marijuana must have occurred, *United States v. Mercer*, 18 M.J. 644 (A.F.C.M.R. 1984), *aff'd*, 21 M.J. 28 (C.M.A.1985); and (b) he must have aided and abetted that distribution while sharing in the distributor's criminal purpose or design.

■ Any transfer between Dottie, a registered confidential informant, and Investigator Oberti was not unlawful. *See United States v. West*, 13 M.J. 800, 802 (A.C.M. R.1982); para. 213*g* (5), 1969 Manual, *supra; United States v. Sneed*, 17 U.S.C.

---

1. The Court of Military Review affirmed the findings and sentence by Memorandum Opinion on November 22, 1985, which addressed the issue of subject-matter jurisdiction. We do not disagree in any way with that decision. *United States v. Lockwood*, 15 M.J. 1 (C.M.A.1983); *United States v. Trottier*, 9 M.J. 337 (C.M.A. 1980).

M.A. 451, 38 C.M.R. 249 (1968). Thus, as far as disclosed by the evidence of record, the only unlawful distribution on June 14, 1984, was that between the unknown civilian and Dottie. The question is whether appellant associated himself with the purpose of the civilian distributor.

One argument in favor of liability proceeds on the premise that anyone who receives drugs is aiding and abetting the distributor because without a recipient there could be no distributor. If this premise is correct, then Hill was clearly aiding and abetting the distribution of the marijuana because he intentionally was facilitating receipt of the drug. However, examination of relevant legislation and directives reveals that the premise of this argument is shaky.

The Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. § 801–970) specifically chose to punish the distributor of narcotics more severely than the user who acquires the drugs. Thus, 21 U.S.C. § 841 provides enhanced sentences for persons who distribute or intend to distribute narcotics. In so doing,

> Congress followed the philosophy of the "President's Advisory Committee on Narcotic and Drug Abuse," ("the Prettyman Commission"), established by President Kennedy in 1963, which proposed stringent measures against the evils of drug traffic and rehabilitation rather than retribution in the case of personal drug abuse.

See United States v. Swiderski, 548 F.2d 445, 449–50 (2d Cir.1977).

On September 23, 1982, President Reagan followed the lead of Congress when he issued Executive Order No. 12383. This Executive Order amended paragraph 127c, 1969 Manual, supra, to increase the maximum punishment imposable for offenses involving manufacture, distribution, and introduction of drugs. Presumably, the President also had concluded that heavier penalties were required for drug distributors than for drug users.

Since lesser punishment is authorized for mere possession of drugs than for distribu-tion, a legislative intent is indicated that one who receives drugs for personal use should not be considered as aiding and abetting distribution of the drugs which he has received. Otherwise, prosecutors would be free to obliterate the distinction between possessors and distributors by charging any possessor with aiding and abetting the distribution of the drugs which he has received.

The Court of Appeals for the Second Circuit had the distinction between distributors and users in mind when it decided United States v. Swiderski, supra. There, the defendants were a man and a woman who were engaged to each other and who had jointly acquired some cocaine. In reversing their convictions for possession with intent to distribute cocaine, the Court of Appeals emphasized that the Comprehensive Drug Abuse Prevention and Control Act of 1970 "draws a sharp distinction between drug offenses of a commercial nature and illicit personal use of controlled substances." 548 F.2d at 449.

Admittedly, the legislature can confer considerable discretion on prosecutors in selecting what charges should be preferred. Thus, a prosecutor may be free to elect between indicting for a felony or for a misdemeanor where the same misconduct is involved. Cf. United States v. Batchelder, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). However, in order to effectuate a presumed legislative intent, the courts have developed some limitations on prosecutorial discretion.

For example, many courts follow Wharton's Rule, whereunder a defendant may not be convicted of conspiring to commit a subsequent offense with another person if commission of that offense necessarily required the active participation of both persons. See United States v. Crocker, 18 M.J. 33 (C.M.A.1984). Thus, prosecutors are precluded from using conspiracy charges to escalate punishments. Similarly, the courts have imposed limitations on charging several offenses for one act of misconduct. See Ball v. United States, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985);

*United States v. Hickson*, 22 M.J. 146 (C.M.A.1986); *United States v. Baker*, 14 M.J. 361 (C.M.A.1983).

In concluding that a receiver of drugs cannot be transmuted into a distributor by use of Article 77 of the Code, we have not disregarded this Court's holdings that, for purposes of an accomplice-corroboration instruction, a purchaser of drugs should be treated as an accomplice of the seller. *See, e.g., United States v. Aguinaga*, 25 M.J. 6 (C.M.A.1987), and cases cited therein. In doing so, we have recognized that, although this adds somewhat to the burden of the prosecution, such a purchaser is sufficiently involved in the transaction that his testimony is just as suspect as is that of the more classic accomplice. However, where substantive criminal liability is involved, a different approach has been taken, and the buyer has not been treated as an accomplice of the seller. *Wharton's Criminal Law* § 38 at 202 (C. Torcia 14th ed. 1978); *see generally Haynes v. State*, 113 Tex.Cr.R. 93, 18 S.W.2d 1081 (1929) (implying a distinction between definition of "accomplice" for evidence purposes and definition of "accomplice" for substantive criminal-law purposes).

As the authors have explained in an oft-cited text: [2]

There are, however, some exceptions to the general principle that a person who assists or encourages a crime is also guilty as an accomplice. For one, the victim of the crime may not be held as an accomplice even though his conduct in a significant sense has assisted in the commission of the crime....

*Another exception is where the crime is so defined that participation by another is inevitably incident to its commission. It is justified on the ground that the legislature, by specifying the kind of individual who was guilty when involved in a transaction necessarily involving two or more parties, must have intended to leave the participation by the others unpunished. ... Thus, under this exception ... a purchaser is not a party to the crime of illegal sale, ...*

The Model Penal Code gives express recognition to these two exceptions to accomplice liability, as do some of the recent recodifications.

The Court in Swiderski reasoned that, unlike an "agent who [, by] deliver[ing] to his principal performs a service in increasing the distribution of narcotics," buyers "who simultaneously acquire a drug jointly for their own purpose ... do not perform any service as links in the chain; they are the ultimate users." 548 F.2d at 451.[3]

 Just as a buyer of drugs for his own personal use is not an aider and abettor of the distributor, it would seem that one who has associated himself solely with the buyer is not thereby aiding and abetting the distributor. However, we see no reason why someone who initially is brought into a drug purchase by the buyer cannot at some point sufficiently associate himself with the purpose of the seller so that he becomes an aider and abettor of the seller. On this basis, the providence inquiry is adequate to sustain the military judge's acceptance of Hill's guilty plea.

When asked during the providence inquiry about the Government's theory to support appellant's liability for distribution of the marijuana, trial counsel replied that this was established by "the fact that he enabled persons selling it to complete the transaction by providing front money." Defense counsel indicated at some length

---

2. "The Limits of Accomplice Liability," W. La-Fave and A. Scott, *Handbook on Criminal Law* § 65 at 521–22 (1972) (emphasis added; footnotes omitted). *See also Wharton's Criminal Law* § 38 (C. Torcia 14th ed. 1978).

3. *Swiderski* has not been followed by some other circuits, where those courts found the facts clearly distinguishable and properly held that *Swiderski* was not controlling. *See, e.g., United States v. Rush*, 738 F.2d 497, 514 (1st Cir.1984), *cert. denied*, 470 U.S. 1004, 105 S.Ct. 1355, 84 L.Ed.2d 378 (1985); *United States v. Taylor*, 683 F.2d 18, 21 (1st Cir.) *cert. denied*, 459 U.S. 945, 103 S.Ct. 261, 74 L.Ed.2d 203 (1982); *United States v. Wright*, 593 F.2d 105, 107–08 (9th Cir. 1979).

his concurrence with the prosecutor's exposition; and, in turn, he emphasized that "Hill fronted $35.00 to satisfy the vendor's desires that the entire purchase price of the marijuana be fronted prior to the marijuana being fronted." Moreover, defense counsel asserted that Hill could be found guilty as to one who aided "the other perpetrators to the offense. That being Macy Roberson and were it not for Dottie [sic] status, Dottie McCray, *and the person at that—at the residence, who was selling the marijuana.*" (Emphasis added.) Appellant indicated specifically his agreement with the accuracy of the facts recited by his counsel.

Under these circumstances, we conclude that the testimony during the providence inquiry was not inconsistent with appellant's plea and that his testimony, as interpreted at trial by the parties, authorized the finding of guilty as to the June 14 distribution. *Cf. United States v. Knudson,* 14 M.J. 13 (C.M.A.1982); *United States v. Burroughs,* 12 M.J. 380 (C.M.A. 1982).

### III

The decision of the United States Army Court of Military Review is affirmed.

Judge SULLIVAN concurs.

COX, Judge (concurring in the result with reservations):

I agree that appellant's admissions were sufficient to establish the providence of his

plea. Therefore, I join in affirming the challenged conviction. I disassociate myself, however, from at least two aspects of the majority opinion.

First, because this was a guilty-plea case, the Government has had no occasion to present its view of the facts. Indeed, a review of the allied papers suggests that the Government had a much stronger case than that admitted by appellant. Of course the sufficiency of a guilty plea is tested solely on the basis of admissions before the court. *See* Art. 45(a), Uniform Code of Military Justice, 10 U.S.C. § 845(a). But legal sufficiency is all we should be testing in these cases as their one-sided versions generally are poor vehicles for announcing new law. *See United States v. Byrd,* 24 M.J. 286, 293 (C.M.A.1987) (Cox, J., concurring in the result); *United States v. Reed,* 24 M.J. 80, 86 (C.M.A.1987) (Cox, J., dissenting). Consequently, I do not join that part of the majority opinion that suggests, albeit in dicta, a servicemember who assists in accomplishing a drug transaction might associate "himself solely with the buyer [and] ... not thereby ... [aid] and ... [abet] the distributor." * 25 M.J. at 414.

Second, these facts present no opportunity to contemplate implications, if any, on military law of *United States v. Swiderski,* 548 F.2d 445 (2d Cir.1977), the facts of which bear scant resemblance to the instant case.

---

* Article 77, Uniform Code of Military Justice, 10 U.S.C. § 877, defines a principal, in pertinent part, as one "who commits an offense ... or aids, abets, counsels, commands, or procures *its commission.*" (Emphasis added.)