UNITED STATES

v.

Technical Sergeant Nate L. LIPPOLDT, FR522–98–9567 United States Air Force.

ACM S28366.

U.S. Air Force Court of Military Review.

Sentence Adjudged 21 June 1990.

Decided 19 Dec. 1991.

---

Appellate Counsel for the Appellant: Major Ronald G. Morgan and Captain Michael D. Burt.

Appellate Counsel for the United States: Colonel William R. Dugan, Jr., Lieutenant Colonel Brenda J. Hollis, and Major Ann M. Mittermeyer.

Before PRATT, KEAN and CONNELLY, Appellate Military Judges.

OPINION OF THE COURT

KEAN, Judge:

At a party, Staff Sergeant Keith Gattis approached the appellant, Technical Sergeant Nate Lippoldt, and asked if Lippoldt could help him obtain some marijuana. After hesitating at first, Lippoldt agreed to put Gattis in touch with his (Lippoldt's) brother, a civilian who lived near the base and who occasionally used marijuana. Pursuant to this agreement, Lippoldt tele-

phoned his brother who, as luck would have it, had some marijuana at his home. Lippoldt then drove Gattis to his brother's house and introduced the two. The brother handed Gattis a small packet of marijuana, enough for about five joints. Lippoldt drove Gattis back to Gattis' house, where Gattis smoked one joint in Lippoldt's presence. No money changed hands in this transaction, and Lippoldt never touched the marijuana.

When these events came to light, Lippoldt was charged with conspiring with Gattis to possess marijuana, in violation of Article 81, UCMJ, and distribution of the same marijuana to Gattis (as an aider and abettor of his brother), in violation of Article 112a. At trial, Lippoldt moved to require the prosecution to elect to proceed on one specification or the other. Then, without the motion having been argued or decided, he entered unconditional pleas of guilty to both charges and specifications.[1] Apparently it was the intention of the parties, and the military judge, to use the providence inquiry to develop a factual background for the motion. However, after completing the inquiry (which included eliciting from Lippoldt an acknowledgment that by his pleas he was giving up any defenses he might have), and without further reference to the motion, the military judge accepted the pleas and entered findings of guilty. Only then did the parties return to the motion. After brief argument, the military judge denied it.

 The threshold issue presented by these facts—an issue not adverted to by either party—is whether Lippoldt's unconditional pleas of guilty waived his objection to being tried on both specifications. Ordinarily an unconditional guilty plea waives any non-jurisdictional defect in the proceedings to that point. *United States v. Jones*, 26 M.J. 632 (A.F.C.M.R.1988). But this is not the ordinary situation, where the accused pleads without having objected to the asserted defect. Here Lippoldt did object, albeit somewhat vaguely, to being tried on both charges and specifications. He subsequently entered unconditional guilty pleas

on the assumption, expressly articulated by defense counsel, that the military judge wanted them entered as a basis for developing the facts. He failed to object to the entry of findings, with the motion still pending and undecided, apparently on the tacit assumption that the military judge would eventually get around to dealing with it. These assumptions were not ill-founded; they appear to have represented the understanding of all concerned as to how the trial should proceed.

Perhaps this irregular situation should be dealt with under the rubric of R.C.M. 905(d), which permits the military judge, for good cause, to defer until after findings the determination of a motion made before pleas are entered, but only if to do so would not adversely affect a party's right to review or appeal. While the "good cause" in this instance is not articulated in the record, the military judge did defer determination of the motion until after findings, and we decline to give that act a consequence (waiver of the objection embodied in the motion) not contemplated by R.C.M. 905(d). At a more common-sense level, we will not find waiver when all parties to the proceeding believed in good faith that the issue was preserved.

We proceed, then, to the merits of the appellant's argument. In his assignment of errors, Lippoldt asserts that it is "manifestly unfair" to hold him accountable at both ends of this drug transaction, and that, as discussed in *United States v. Hill*, 25 M.J. 411 (C.M.A.1988), he had not sufficiently associated himself with the purpose of the distributor of the marijuana to be guilty of distribution as an aider and abettor. We disagree.

 For Lippoldt to be guilty as a principal of the unlawful distribution of marijuana, two conditions must be fulfilled: there must have been such a distribution, and he must have aided and abetted it while sharing the distributor's criminal purpose or design. *Hill, supra,* at 412. There was an unlawful distribution of marijuana, from Lippoldt's brother to Gattis, and Lip-

---

1. A second specification under Charge II was withdrawn after arraignment.

poldt aided and abetted it by bringing the two together; without his assistance the transaction would not have occurred. There is no question but that Lippoldt intended that his brother should provide marijuana to Gattis; that is a sufficient sharing of the brother's criminal purpose. The fact that the appellant's involvement was at the behest of Gattis is of no consequence. As then-Chief Judge Everett stated in *Hill:*

> [W]e see no reason why someone who initially is brought into a drug purchase by the buyer cannot at some point sufficiently associate himself with the purpose of the seller that he becomes an aider and abettor of the seller.

25 M.J. at 414.

Of course, a literal application of the Article 77, UCMJ, definition of a principal—one "who commits an offense ... or aids, abets, counsels, commands or procures its commission"—would result in anyone who obtains illegal drugs being viewed as a principal in the offense of distribution of those drugs to himself; after all, without someone to receive the drugs the offense of distribution would not be possible. In *Hill,* the Court of Military Appeals, following the lead of the Second Circuit in *United States v. Swiderski,* 548 F.2d 445 (2d Cir.1977), carved a narrow exception out of this proposition by holding that one who obtains illegal drugs for personal use cannot be convicted as an aider and abettor of the distributor of those drugs. This exception was intended to effectuate the legislative intent, manifest in the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. § 801 *et seq.*) as well as in the maximum punishments prescribed by the Manual for Courts-Martial, that distributors of illegal drugs should be punished more severely than consumers. Put another way, it prevents prosecutors from bootstrapping possession into distribution and thereby increasing the authorized sentence. The *Hill–Swiderski* exception applies where two or more persons conspire to obtain illegal drugs for their joint or mutual use (the scenario in *Swiderski*) or where an aider and abettor of the receiver of the

drugs has associated himself solely with the purpose of the receiver (that is the way Hill tried to portray himself; the Court accepted the theoretical possibility, but Hill lost on the facts).

*Hill–Swiderski* is a judge-made doctrine that effects the intent of the legislature (that distribution of illegal drugs is a more serious offense than possession for personal use) by declining to give effect to the literal meaning of the statute (that aiders and abettors are guilty as principals). Such devices sometimes are necessary but they should be applied as narrowly as possible. We decline to expand this one by applying it to an accused who, like Lippoldt, acts as the middleman or facilitator in a drug transaction, serving the interests of both the distributor and the receiver.

We hold that, on the facts of this case, Lippoldt is guilty as an aider and abettor of the distribution of marijuana to Gattis. On the same set of facts, he is guilty of conspiring with Gattis to possess the marijuana. Charging him with both offenses did not amount to an unreasonable multiplication of charges. R.C.M. 307(c)(4); *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *United States v. Carter,* 30 M.J. 179 (C.M.A.1990); *United States v. Crocker,* 18 M.J. 33 (C.M.A.1984). We therefore will affirm both findings of guilty.

■ Lippoldt also asserts that his sentence, which consists of a bad-conduct discharge, confinement for 4 months, and reduction to E–1, is too severe. We note in considering this assertion that the military judge viewed the two charges and specifications of which Lippoldt was convicted as multiplicious for sentencing purposes. We note, as well, that Lippoldt was an experienced noncommissioned officer of 13 years service. Weighing his offenses against the matters presented in mitigation and all other relevant factors, we are convinced that the sentence was appropriate. Article 66(c), UCMJ.

The findings of guilty and the sentence are correct in law and fact and no error materially prejudicial to the substantial

rights of the accused was committed. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

Senior Judge PRATT and Judge CONNELLY concur.